Laura ELLIOTT, Appellant,

v.

Lois Justine ELLIOTT, Respondent.

No. 11389.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 24, 1981.

Charles F. Kiefer, Jr., Daniel, Clampett, Ritterhouse, Dalton & Powell, Springfield, Jack L. Miller, Lebanon, for appellant.

David Donnelly, Mary A. Dickerson, Donnelly, Baldwin & Wilhite, Lebanon, for respondent.

GREENE, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Laclede County which modified the child custody provisions of a dissolution of marriage decree.

A chronology of the legal history of the case is as follows. On January 18, 1975, Kevin Elliott married Lois Jean Jepsen. Lois was pregnant at the time, allegedly by an individual other than Kevin. On May 26, 1975, a female child, Rachael, was born. Kevin and Lois were living in Missouri at the time of Rachael's birth, as were Kevin's parents, Laura and Wilbur Elliott. Kevin and Lois experienced marital problems and were unable, or unwilling, to care for the baby. In July of 1976, they took the child to Kevin's mother, Laura, and asked her to

care for it. On October 28, 1976, the marriage of Kevin and Lois was dissolved by a decree of the Circuit Court of Laclede County. In the decree, Kevin and Lois were adjudged to be the legal parents of Rachael and the trial court awarded legal custody of Rachael to Kevin's parents, Laura and Wilbur. Lois left Missouri and, after a considerable amount of cross-country travel, including a trip to California, returned to the state of Michigan, where she had resided prior to her marriage to Kevin, where she obtained employment as a bartender and cocktail waitress. Lois showed little or no interest in Rachael's welfare, and on June 8, 1977, the parental rights of Lois to Rachael were terminated by the Circuit Court of Laclede County. Laura and Wilbur Elliott, who had legal custody of Rachael, then filed a petition in the Laclede County Circuit Court to adopt her. The trial court entered an interlocutory order of adoption, to become final in nine months.

In November of 1977, Laura, Wilbur, and Rachael moved to LaJunta, Colorado. Kevin, Rachael's legal father, established residence in Cripple Creek, Colorado. In December of 1977, Lois filed motions in the Laclede County Circuit Court to set aside the decree terminating her parental rights, and to dismiss the adoption proceeding. There is nothing in the record to show how or why the trial court determined it still had jurisdiction in the parental rights proceedings. In January of 1978, Laura's husband, Wilbur, died. In May of 1978, the Laclede County Circuit Court restored the parental rights of Lois to Rachael, and dismissed the adoption proceedings. In June of 1978, Lois filed a motion in the Circuit Court of Laclede County, seeking to modify the child custody provisions of the dissolution decree, alleging changes of circumstances which were a) death of Wilbur, and b) that she (Lois) had rehabilitated herself. The motion was directed to Kevin alleging that he was not a fit and proper person to have custody of the child.

At this time, Lois was, and had been, a resident of the state of Michigan since April of 1977. Kevin, Laura and Rachael had been residents of the state of Colorado since November of 1977. Kevin filed a motion with the trial court to dismiss the motion to modify for lack of jurisdiction of the subject matter, which motion was overruled by the trial court. Laura and Kevin had been served with process in Colorado. Laura was considered as a direct party in interest by the trial court. The case was set for trial on May 21, 1979, at which time Laura appeared in the Circuit Court of Laclede County, and renewed the motion to dismiss for lack of jurisdiction of the subject matter, which motion was taken with the case. After hearing evidence, the trial court again overruled the motion to dismiss for lack of jurisdiction, sustained the motion to modify, and transferred custody of Rachael to Lois. In its judgment dated May 21, 1979, the trial court specified that the transfer of custody be implemented instanter, before the judgment became final. Laura filed a notice of appeal on May 25, 1979.

On June 26, 1979, the trial court found Laura in contempt for failure to relinquish custody of Rachael to Lois, as ordered by the court, and also ordered Laura confined in the Laclede County jail until such time as she delivered Rachael to Lois. Laura then perfected her appeal. Lois filed a motion to dismiss Laura's appeal, alleging that Laura was not a party to the modification proceeding and, therefore, has no right to appeal. Where third parties, by virtue of a decree granting them custody of a child of divorced parents, become in loco parentis to the child, the action of a trial court modifying the custody provisions of the decree in a manner adverse to them, accords such third parties the status of aggrieved parties entitled to appeal under the law. *Warman v. Warman*, 496 S.W.2d 286, 287 (Mo.App. 1973). Such is the case here. The motion to dismiss Laura's appeal is overruled.

On appeal, Laura relies on two points, the first of which is that the trial court erred in overruling the motions to dismiss because

the trial court lacked jurisdiction of the subject matter by reason of § 452.450, RSMo 1978. Since this point is dispositive of the matter, we see no need to review the second point raised. The statute reads as follows:

"1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is the best interest of the child that a court of this state assume jurisdiction because;

(a) The child and his parents, or the child and at least one litigant have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and:

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best

interest of the child that this court assume jurisdiction.

2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

Section 452.450 is a section of the Uniform Child Custody Jurisdiction Act (UCCJA) which was adopted by the Missouri Legislature at the second regular session of the 79th General Assembly. The statute in question is a limitation statute which attempts to limit custody determination to one state, which normally is the state where the child resides, *In re Custody of Glass*, 537 P.2d 1092, 1094 (Colo.App.1975), and seeks to discourage forum shopping. Section 452.450 became effective on August 13, 1978. The motion to modify was filed in June of 1978, but was not heard until May 21, 1979, some nine months after the effective date of the statute. The questions presented are should the statute be applied retrospectively to the date of the filing of the motion to modify, and, if so, did the Circuit Court of Laclede County have jurisdiction to hear the case in face of the statute.

Section 452.450 is a procedural statute. It does not create any new substantive rights for any of the parties, but merely dictates the forum where custody actions will be heard. It is analogous to service of process statutes, which have many times been held to be procedural, rather than substantive. See *Scheidegger v. Greene*, 451 S.W.2d 135 (Mo.1970). The constitutional prohibition against retrospective legislation (Art. I, § 13) does not apply to procedural statutes. If the statute is procedural, it applies to all actions "falling within its terms, whether commenced *be-*

*fore* or *after* the enactment * * * unless a contrary intention is expressed by the legislature * * *." *Scheidegger,* supra, at 137. Therefore, a statute that solely deals with *procedure,* as this one does, applies to all actions that have not been heard on the effective date of the statute. We hold that the statute has retrospective application in this case.

■ Using the statute as our guide, it is evident that the Circuit Court of Laclede County had no jurisdiction to hear this case. There is nothing in the record to show that any of the statutory tests necessary to confer jurisdiction had been met. Missouri was not the home state of the child at the time the motion was filed, and had not been the home state of the child within six months prior to the motion being filed. Neither parent, or the legal custodian, had resided in Missouri within six months of the date when the motion was filed. Neither the child, or any interested party, had any remaining significant connection with Missouri. There was no substantial evidence in Missouri concerning the child's present or future care, protection, training, or personal relationships. Most, if not all, of such evidence was in Colorado, where the child had resided for more than seven months before the motion to modify was filed. The child was not physically present in Missouri when the action was filed, had not been abandoned here or anywhere else, and there is no showing of any need for emergency action because of mistreatment or abuse of the child. There is no showing that no other state had jurisdiction. In fact, logically, Colorado is the state where the action should have been filed.

■ Even if we were to say that the statute did not apply because it was not effective at the time of filing of the motion, which we do not, Missouri still would not have had jurisdiction. Prior to the enactment of the statute, Missouri, in determining jurisdiction in child custody cases, used the test set out in § 79 of the Restatement,

Second, Conflict of Laws, which states that, "[a] state has power to exercise its judicial jurisdiction to determine the custody . . . of a child . . .

(a) who is domiciled in the state, or

(b) who is present in the state, or

(c) who is neither domiciled nor present in the state, if the controversy is between 2 or more persons who are personally subject to the jurisdiction of the state."

See *Kennedy v. Carman,* 471 S.W.2d 275 (Mo.App.1971) for the application of this test. Here, the child was not domiciled or present in Missouri at the time of filing, and none of the parties to the controversy were personally subject to the jurisdiction of Missouri courts. The child's mother lived in Michigan, while the child's legal father and the child's legal custodian (grandmother) lived in Colorado. The Circuit Court of Laclede County did not have jurisdiction in this case under any appropriate standard, over objection, and in the face of a motion to dismiss for lack of jurisdiction. In order to have a valid judgment, the court must have jurisdiction; where such jurisdiction does not exist, as is the case here, the judgment is absolutely void. *McAllister v. Garrett,* 591 S.W.2d 31 (Mo.App.1979); *Plant v. Haynes,* 568 S.W.2d 585 (Mo.App. 1978); *McCoy v. Briegel,* 305 S.W.2d 29 (Mo.App.1957); *Carl v. Carl,* 284 S.W.2d 41 (Mo.App.1956). It naturally follows that if the trial court did not have jurisdiction to transfer the custody of Rachael, it did not have jurisdiction to hold Laura in contempt for failure to make such transfer.

The judgment of the trial court is reversed, and the cause is remanded to the trial court with directions to a) set aside its judgment dated May 21, 1979, which modified the dissolution decree and transferred custody of Rachael Elliott to Lois Elliott; b) set aside its judgment dated June 26, 1979, finding Laura Elliott in contempt for failure to comply with the trial court's order of May 21, 1979, which ordered Laura Elliott to immediately transfer custody of

Rachael Elliott to Lois Elliott; c) sustain the motion to dismiss the motion to modify for lack of jurisdiction, and dismiss, with prejudice, the motion to modify; and d) dismiss, with prejudice the application to cite Laura Elliott for contempt.

All concur.