**N.W., by M.G., Respondents,**

v.

**B.W., Appellant.**

**No. WD 37650.**

Missouri Court of Appeals, Western District.

July 1, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 1986.

Application to Transfer Denied Oct. 14, 1986.

Rebbecca Lake Overman, Cockran, Kramer, Kapke & Willerth, Independence, for appellant.

Robert C. Paden, Karen DeLuccie, John W. Dennis, Jr., Paden, Welch, Martin, Albano & Graeff, P.C., Independence, for respondents.

Before SHANGLER, P.J., and DIXON and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is a paternity and custody suit filed in August, 1982, by the man who declares he is the father of the child in question. In addition to a judgment favorable to him on paternity, he succeeded in getting an award of joint custody with the mother in which he is named as residential custodian. The father will be referred to as "M.G."; the child's mother, B.W., who appeals, will be referred to as "mother." The maternal grandparents, served but not appearing, have had actual custody of the child, N.W., (born in June, 1977, in Jackson County) which they obtained from the mother in late 1978. The grandparents kept the child in Jackson County until February, 1981, when they moved with the child to Oklahoma. The primary point by the mother in this court is whether Missouri had jurisdiction to determine paternity or custody under the Uniform Child Custody Jurisdiction Act (Act), adopted in this state in Sections 452.440–.550 RSMo 1978.

The mother and a man named Mark Trail were married in 1973 and lived together in Jackson County, Missouri until August, 1975, when they separated, with Trail moving to California. In March, 1976, the mother, then in her early twenties, met M.G., then age 16, at a game emporium in Jackson County. They became intimate. The child here involved was conceived in September or October 1976. In March, 1977, M.G. and the mother began living together in Missouri. Late in March, 1977, exactly three months before the child was born the mother was granted a dissolution from the Trail marriage in Jackson County. The child in question was born in June 1977. M.G., the mother and the child lived together until October or November, 1978, when the mother moved back with her parents, also in Jackson County. The mother later moved but left the child with her parents. The maternal grandparents, with the child, moved to Oklahoma in February, 1981. Though no longer co-habiting, the mother and M.G. have remained as residents of Jackson County at all times pertinent to this case.

On August 10, 1982, M.G. filed this suit for the child and himself in Jackson County naming as defendants the mother, the grandparents and Trail under whose tenure as husband the child was conceived. On August 16, 1982, the mother and her parents filed a one page petition in Oklahoma asking custody be vested in the grandparents. No mention was made of a father, nor was anything stated or shown about pending suit in Missouri. The Oklahoma judgment was granted the same day.

By her answer to his petition of December 15, 1982, the mother denied M.G. was the father and stated the child was a resident of Oklahoma, attached copies of the Oklahoma custody order, and denied Missouri had jurisdiction.

M.G. asked for a blood test to be performed on the mother and child—this was ordered in February, 1983. Nothing was done on that score until January 31, 1985, when the mother filed for summary judgment. In that motion she stated she had on January 9, 1984, signed a waiver consenting to have her parents adopt the child in Oklahoma, so that she had no authority to produce the child for a blood test. Her motion stated the district court in Leflore County, Oklahoma had allowed the grandparents to adopt the child in February, 1984. Copies of the adoption decree were attached to her motion. As in the custody matter in Oklahoma, no mention was made of a father. This motion was denied, but the child was never produced for a blood test.

In March, 1985, Trail asked to be dismissed from the suit stating he was not the

father and had no sexual contact with the mother since July, 1975, when he moved to California. He stated he had returned to and been a resident of Missouri since 1977.

Judge Coburn presided at the hearing on the petition on July 30, 1985, at which there was abundant evidence supporting the court's judgment that M.G. was the biological father. There was abundant evidence M.G. had acted as if he were the father and visited the child along with his mother, but that the child and the maternal grandparents moved to Oklahoma to thwart his visitation and the custody and adoption proceedings filed in Oklahoma were to keep him from establishing paternity or having visitation or obtaining custody. The judge noted no blood sample was provided despite court order. There was evidence of M.G.'s inability to visit with the child in Oklahoma because of the actions of the grandparents. The mother testified Trail could have been the father as he had returned to the Kansas City area in September or October, 1976 and she had rendezvoused with him two times at a fast food restaurant and then had intercourse with him at a drive-in movie. Trail denied all of this.

The judgment declared the Missouri court had jurisdiction. It found the grandparents in default, and declared M.G., not Trail, as the father. The court did not afford full faith and credit to the Oklahoma actions and gave M.G. and the mother joint custody, with M.G. as residential custodian.

In this court the mother *does not* ask Missouri to give full faith and credit to what was judicially done in Oklahoma, as she argued in the circuit court. Rather, on appeal she says Missouri did not have jurisdiction and alludes to the result of Oklahoma being the only state to be able to hear the matter based on the child's presence there. Inconsistent theories presented in this case by the mother may be attributable to the fact counsel on appeal is the third set of attorneys she has used in Missouri. The custody and adoption proceedings in Oklahoma did not mention there was a father and no one in that capacity was ever named, served, or sent copies of

the decrees. Under the Uniform Act, the appellant argues, Missouri was not the "home state" for paternity or custody because the child had been in Oklahoma since 1981. She also claims in her brief there was no substantial evidence to support the *custody* award to M.G.

The jurisdiction section of the Act is located in § 452.450 which reads:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or persons acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because;

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and;

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best

interest of the child that this court assume jurisdiction.

2.  Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.

3.  Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

This definition of home state in § 452.-445(4):

Home state means the state in which, immediately preceding the filing of custody proceeding, the child lived with his parents, a parent, an institution; or a person acting as parent, for at least six consecutive months; or, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

Reduced to the lowest denominator this case must be decided on whether a Missouri father can use a Missouri court to establish paternity or to obtain an *initial* order of custody more than six months after the unmarried Missouri mother, without any prior court action as to paternity or custody, has allowed the child to move out of state with the mother's parents. Under the Act, may an unwed parent who stays in Missouri deny the use of Missouri courts to a Missouri putative father of a Missouri born child by simply giving physical custody to someone who moves to another state? This court thinks not.

## PATERNITY

The mother asserts the Act is determinitive of the jurisdiction for a paternity suit, because it is here coupled with a custody count. She admits during oral argument that if this were a suit for paternity only, then § 452.450 on jurisdiction would not control. There is some merit to her argument. The definition section of the Act,

§ 452.445(2) defines "custody proceeding" as including, "proceedings in which a custody determination is one of several issues, such as an action for dissolution of marriage, legal separation, separate maintenance, appointment of a guardian of the person, child neglect or abandonment ...." The supreme court has held a declaratory judgment under Chapter 527 as the proper form of action for a paternity suit. *K.D.R. v. D.E.S.*, 637 S.W.2d 691, 694 (Mo.banc 1982). The author of the Paternity section of Missouri Family Law, third edition, The Missouri Bar (1982) § 18.18 states: "[s]ince most paternity actions will also involve the custody of a child, the requirements of the [act] must be met in order to confer jurisdiction upon the court."

The Eastern District in B___ v. B___, 673 S.W.2d 819, 822 (Mo.App.1984), was faced with a defendant who appealed from a finding of his being the father and who argued the Act applied as to jurisdiction. The court assumed without deciding that the Act applied to the mother's action for paternity and support and found against the father. The posture of the facts in the case at bar make a similar approach somewhat sensible. Here a man seeks declaration that he is the father, the mother resists and would keep fatherhood of the child undecided and its actual custody out-of-state with her parents, all without benefit of judicial determination. Without deciding whether the Act applies to a paternity action such as this, suffice it to say that even if it does, the mother's point as to lack of jurisdiction on paternity would fail for the reasons given *infra* as to why the Act does not preclude a Missouri court's jurisdiction over custody of the child. In any event, for paternity the trial court had subject matter jurisdiction over the parties. *Sweany v. Meinecke*, 691 S.W.2d 368, 370 (Mo.App.1985).

It is of particular note that the mother does not appeal the conclusion in the judgment that M.G. is the father. The evidence and inferences were overwhelming of the fact everyone involved in this suit, includ-

ing the child, has felt that M.G. is the biological father.

## CUSTODY

Given the peculiar facts of this case, Missouri's jurisdiction may be sustained under either §§ 452.450.1(2) or (4). A brief discussion of § 452.450.1(1), "home state" is first in order.

Under § 452.450.1(1)(a), Missouri has jurisdiction if it is the home state of the child at the time of commencement of the proceedings, and according to § 452.445(4) home state means the state in which, immediately preceding the child lived with *his parents, a parent, an institution; or a person acting as parent,* for at least six months. The mother in effect argues Missouri could not have been the home state and Oklahoma was the only home state. Because of the facts here it might be said both states or neither could qualify as home state. Determination of home state is obviated and not conclusive since the Missouri action, in conformance with jurisdiction requirements under (2) and (4) preceded the Oklahoma action.

The trial court's determination of jurisdiction in this state can be upheld under § 452.450.1(2) since it is in the child's best interest because the two litigants, the mother and father, have a significant connection with Missouri, and because there is substantial evidence here of the child's future care, protection, training and personal relationships. This section (2) is an elastic provision to cover the unusual circumstances which would confer jurisdiction in a state other than the home state. Krauskopf, Child Custody Jurisdiction Under the UCCJA, 34 J.Mo.Bar 383, 386 (1978). Under this section the court's jurisdiction extends past the six month period under (1) if a "substantial connection remains." *Id.* Under the Comment to Section 3 the commissioners who drafted the Act wanted jurisdiction to exist only if it is in the child's best interest and not merely a convenience to the feuding parties as to a particular state.

This paragraph is to "be flexible enough to cover many fact situations too diverse to lend themselves to exact description." Uniform Child Custody Jurisdiction Act § 3 Commissioner's Note (1968). [Found in Uniform Laws Annotated, Vol. 9, Master Edition, p. 124 (1969)]. This is such a case.

The interest of the child is and was served in Missouri where there was "optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contacts with the state." *Krauskopf, supra,* at 386. With both parents, and the paternal grandmother in Missouri, such criteria are met invoking Missouri as the proper forum. With both parents in Missouri, one of whom wants custody and has convinced a court he is capable of providing a home, all in the best interests of the child, then (2) of § 452.450.1 supports the decision of the trial court not to condone the mother's argument that Oklahoma was the only state with jurisdiction. Under the particular and peculiar facts here, court approval of the mother's actions would be to condone the very conduct the Act sought to preclude: the physical movement of a child to void jurisdiction in one state or to proliferate jurisdiction and create jurisdictional competition among states. *Cf. In re BRF,* 669 S.W.2d 240, 243 (Mo.App.1984).

Physical presence of the child is not required to obtain jurisdiction under § 452.-450.3 of our statute. *B.R.F., supra,* also bears upon evaluation of the definition of home state as it pertains to (1). For Oklahoma to be the home state the child would have to live there six consecutive months and the grandparents would have to be *persons acting as a parent.* Section 452.-445(4), *supra.* This court recognizes that the mother of an illegitimate child has a superior right to control as to the father, "or any other person." *In re Richardet,* 280 S.W.2d 466, 471 (Mo.App.1955). However, in *B.R.F.,* the grandmother who took care of the child in New Jersey after the mother's death there, obtained a temporary award of custody. She did so after an evidentiary hearing at which the Missouri father appeared. Here the grandparents

attempt to gain legal custody, as noted by the trial court, came six days after this action was commenced.

*Timmings v. Timmings,* 628 S.W.2d 724, 727 (Mo.App.1982), relied upon by the mother does not aid her cause. There a decree of dissolution and custody occurred in Missouri. The mother and child, contrary to the decree, moved out-of-state, and the father moved to another state. Missouri was held not to have jurisdiction either as home state or under § 452.450.1(2) even though the decree was entered here. In this case both parents continued to live in Missouri, and although the *Timmings* opinion at page 727 states there is nothing in the Act that *confers* jurisdiction because of a party's wrongful act, the Act should not be interpreted so the non-decretal physical transfer by a parent may *take away* jurisdiction from a state where both parents continue to live. To do so would keep Missouri from ever obtaining jurisdiction for the sole reason the child was in Oklahoma. Oklahoma could not be the "home state" because both parents reside in Missouri. If the mother's argument were sustained, there would have been no court anywhere with authority to adjudicate custody of the child. *Dobyns v. Dobyns,* 650 S.W.2d 701, 707 (Mo.App.1983). Such a predicament should not result. The mother's appeal should not be sustained where physical custody, without court determination as to legal custody, has been relinquished by her to her parents who made no attempt to obtain a judgment decree of custody (in Oklahoma) until after the father began his action in Missouri, and where the mother has made no effort or plans no serious attempt to take custody herself and raise the child. To do so would place legal custody jurisdiction in limbo would be to perpetrate an indirect de facto award to the grandparents with no relief to the father other than to take up residence in Oklahoma.

It could also be said Missouri would have jurisdiction under subdivision (4) of the Act. There, if it appears no other state would have jurisdiction under the three other subdivisions and it is in the child's best interest to have this state take jurisdiction then such jurisdiction lies. Applying the criteria of the Act, also adopted in Oklahoma, the only basis for Oklahoma jurisdiction would be the physical presence in Oklahoma. The subsections that follow state the physical presence alone of the child in the state will not necessarily confer jurisdiction on that state. Under the facts and circumstances here it cannot be said that it could appear to Oklahoma that Missouri would not have or assume jurisdiction. *Bell v. Bell,* 682 S.W.2d 892, 895 (Mo.App.1984). With both parents in Missouri and the child in Oklahoma under no decree, Oklahoma could not have felt Missouri lacked jurisdiction. The fact that the mother's and grandparents' suits in Oklahoma followed by six days M.G.'s petition in Missouri undisclosed to the Leflore County, Oklahoma court could have left no doubt of Missouri's exercise of jurisdiction.

The preceding discourse, which supports a finding of jurisdiction in Missouri under two sections of the Act, is based upon the unusual facts and alignment of the parties in this court. Any reliance on the jurisdictional aspects of this opinion must be carefully evaluated based on these facts. The result here does not necessarily imply Oklahoma could not have obtained jurisdiction in this case. The Act recognizes several states may have valid reasons to hear custody cases, but the purpose of the law is to limit the jurisdiction of courts which may act. *Holt v. District Court For Twentieth District,* 626 P.2d 1336, 1340 and 1343 (Okla.1981). In the case at bar the mother and grandparents did not inform the Oklahoma District Court this action had already been filed in Missouri. Oklahoma has language under the Act similar to § 452.465 RSMo, whereby it "shall not exercise its jurisdiction ... if at the time of the filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity" with the Act. *See* 10 O.S.Supp.1980 § 1608(A). So, once the father's action was commenced in Missouri all in conformity with the jurisdictional re-

quirements of the Act, Oklahoma's jurisdiction, if any would have been restrained. *Holt, supra,* at 1342.

Although not raised by M.G., as to the custody issue, it is questionable whether the mother, as appellant, is an aggrieved party. She has taken the position during the entire course of this litigation that she divested herself of custody when her parents took the child to Oklahoma, and by her attempts to let them adopt. It is indeed questionable whether she should now be heard to complain about a judgment that grants to her joint custody with liberal visitation. This is especially so where she has shown no inclination to care for the child herself. M.G., however, does not contest the decree of joint custody. Nevertheless since not raised, her standing or lack thereof as an aggrieved party for this case will not preclude consideration of her appeal on the merits on the custody issue. *Esry v. Esry,* 628 S.W.2d 700, 702 (Mo.App. 1982). The grandparents could have been aggrieved parties only if they became in loco parentis as a result of a court custody award. *Elliott v. Elliott,* 612 S.W.2d 889 (Mo.App.1981).

The mother's remaining point as to the merits of the custody decree for the father is not well taken. While all the evidence will not be set out in detail, suffice it to say the judge was at liberty to believe the father had remarried, had a well paying job, a stable home and a sincere desire to raise his child. *Brown v. Brown,* 676 S.W.2d 519, 520–21 (Mo.banc 1984). Under the standard of review under *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976), the court's judgment is affirmed. The judge was also the trier to determine the mother had no interest past, present or future in any custodial obligation, but only acted as an alter ego for her parents. Where courts are faced with a choice between a natural parent and third persons they are usually unwilling to disregard the belief it is in the best interest of the child to place custody with a fit parent. *Esry, supra,* at 702.

The judgment is affirmed.

All concur.