MINTON, APPELLEE, *v.*
MCMANUS, APPELLANT.

(No. 10943—Decided May 18, 1983.)

*Mr. Vincent Alfera,* for appellee.
*Ms. Janice Gui,* for appellant.

MAHONEY, P.J. Defendant-mother, Patricia Minton McManus, appeals from an order of the Summit County Juvenile Court granting custody of the parties' daughter, Wendy Minton, to plaintiff-father, Steven Paul Minton. We affirm.

Facts

The parties to the instant action were married in Scotland in 1971. Wendy was born in 1972. In 1975, the parties separated and a divorce was granted to Patricia in 1978 by the Court of Session in Scotland. At that time Steven Minton was residing in the United States. He never formally answered the divorce complaint but acknowledges receipt of a copy by mail. As part of that decree, Patricia was awarded custody of Wendy. No provisions were made concerning child support or visitation rights.

After the divorce was granted, Patricia moved back to the United States, was remarried to a man named McManus, and settled in San Diego, California. Minton by this time had remarried and settled in Ohio.

In the summer of 1980, Wendy visited her father for six weeks. In June 1981, Wendy again came to Ohio. However, at the end of the summer, Wendy remained rather than returning to California. Her father enrolled her in school. There is some dispute as to when Patricia Minton McManus first demanded the return of Wendy, but it is undisputed that a demand was made in December 1981. Minton refused to return Wendy and commenced this action for custody on January 26, 1982.

The court conducted hearings, talked privately with the child, and received investigative reports on the homes of both parents. The court reasoned that some state in the United States should take jurisdiction and, therefore, elected to invoke the jurisdiction of the court in the best interest of the child under R.C. 3109.22(A)(2). It granted Minton custody of Wendy with visitation rights to McManus.

Assignments of Error Nos. II and III

"II. · As a matter of state statutory law, the trial court erred in treating the plaintiff's claim for custody as one for an initial decree, where the defendant-

mother had previously obtained a custody decree in Scotland under factual circumstances meeting the jurisdictional standards of Sections 3109.21 to 3109.36 of the Revised Code.

"III. Pursuant to the due process and equal protection clauses of Section 1 of the Fourteenth Amendment to the Constitution of the United States, the trial court erred in failing to recognize the custody decree previously obtained by the appellant-mother in Scotland, where said decree was rendered under factual circumstances that would compel recognition had it been rendered by a court in a state of the United States."

As much of McManus' case hinges on the trial court's refusal to recognize the Scottish custody decree, we will consider these two assignments of error first.

McManus maintains that R.C. 3109.30 should be construed to require recognition of the decrees of foreign nations as well as those of foreign states.

R.C. 3109.30(B) (Section 13 of the Uniform Child Custody Jurisdiction Act) states:

"The courts of this state shall recognize and enforce an initial or modification decree of a court of another state if that court assumed jurisdiction under statutory provisions substantially in accordance with sections 3109.21 to 3109.36 of the Revised Code or if the decree was made under factual circumstances meeting the jurisdictional standards of sections 3109.21 to 3109.36 of the Revised Code, so long as the decree has not been modified in accordance with jurisdictional standards substantially similar to those of these sections."

She argues that the term "state" in this section should be construed to include foreign nations. Minton, on the other hand, contends the adoption of this construction would render meaningless and ineffective Section 23 of the U.C.C.J.A. which provides for recognition of orders of foreign nations. See Annotation (1979), 96 A.L.R. 3d 968, 974. When the Ohio

General Assembly adopted the U.C.C.J.A., as R.C. 3109.21 through 3109.37, it chose to omit Section 23 of the U.C.C.J.A. Had our legislature intended to require the recognition of decrees of foreign nations, it could easily have adopted Section 23 of the U.C.C.J.A. By failing to do so, we believe the legislature expressed its intent not to require the enforcement of such decrees. We will not create such a requirement by judicial construction.

McManus contends further that by applying R.C. 3109.30 so as to exclude orders of foreign nations, the statute is violative of the Fourteenth Amendment to the United States Constitution. It appears from the record that this argument was not raised in the trial court. Objections not raised below cannot be raised for the first time on appeal. *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83 [54 O.O.2d 222]. This rule applies to the failure to claim error on constitutional grounds. *State* v. *Davis* (1964), 1 Ohio St. 2d 28 [30 O.O.2d 16].

### Assignment of Error No. I

"The trial court should have declined to exercise jurisdiction to determine custody in the case because —

"A. The trial court improperly utilized Section 3109.22(A)(2) of the Ohio Revised Code to assert jurisdiction where California was or recently had been the 'home-state' of the child at the time of [*sic*] proceeding was commenced, and California had maximum contact with the child; and —

"B. Where California had maximum contact with the child, the trial court should have declined to exercise jurisdiction on the ground that Ohio is an 'inconvenient forum' pursuant to Section 3109.25 of the Ohio Revised Code; and —

"C. Pursuant to Section 3109.26 of the Ohio Revised Code, the plaintiff was barred from obtaining relief in an Ohio court because he wrongfully retained the child after a visit."

The exercise of jurisdiction by the juvenile court over child custody cases is determined by R.C. 3109.22(A) which provides in part:

"(A) No court of this state having jurisdiction to determine the custody of a child shall exercise that jurisdiction unless one of the following applies:

"(1) This state is the home state of the child at the time of commencement of the proceeding, or this state had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;

"(2) It is in the best interest of the child that a court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; * * *."

The court based its jurisdiction on paragragh (2) above. We find the record supports the trial court's finding of jurisdiction under R.C. 3109.22(A)(2). At the time of the filing of this action both Wendy and her father were living in Ohio together with Minton's second wife. Furthermore, Wendy was enrolled in school and active in extracurricular activities. Thus, there was clearly available in Ohio substantial evidence of Wendy's "present or future care, protection, training, and personal relationships."

McManus claims that California is the "home state" of Wendy, thus, requiring Ohio to yield to the jurisdiction of California. "Home state" is defined as:

"* * * the state in which the child, immediately preceeding the time involved, lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." R.C. 3109.21(E).

However, in this case Wendy had been living in Ohio for nearly eight months immediately prior to the filing of this action. We find that this fits the statutory definition.

McManus further argues that Ohio constitutes an inconvenient forum, citing as support *In re Wonderly* (1981), 67 Ohio St. 2d 178 [21 O.O.3d 111]. However, we find the facts of the instant case are vastly different from those presented in *Wonderly.* In *Wonderly,* the children did not actually reside in Ohio for the eight years prior to the grandparents' seeking relief in Ohio. Here, Wendy actually lived in Ohio for nearly eight months before the filing of this action. Furthermore, as stated earlier, there is substantial evidence concerning this child's interests, etc. in Ohio so as to support the court's finding itself to be a convenient forum.

Finally, under this assignment of error, McManus argues that the court below should not have exercised jurisdiction as Minton had wrongfully retained Wendy. Even if the court had found Wendy to have been wrongfully retained, such a finding would bar an exercise of jurisdiction only in an action to modify a custody decree of another state. R.C. 3109.26(B). As we have held that this action is not one to modify the order of another state, R.C. 3109.26(B) is not applicable.

### Assignment of Error No. IV

"The determination that it is in the best interest of Wendy to be placed in the custody of the plaintiff is against the manifest weight of the evidence and constitutes an abuse of discretion."

Judgments such as this, which are supported by some competent, credible evidence, will not be overruled on appeal

as being against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279 [8 O.O.3d 261].

### Assignment of Error No. V

"The trial court abused his discretion, violated the defendant's constitutional right to due process of law, and erred as a matter of law when he refused to permit appellant's counsel to cross-examine the appellee and the appellee's wife."

McManus argues that she was deprived of her right of cross-examination. Specifically, she claims that the court denied her request to cross-examine Minton.

The proceedings below covered several months and two hearings in court. During the first hearing on February 11, 1982, both parties testified and were subject to cross-examination. Furthermore, prior to the second hearing in August, 1982, counsel for McManus deposed Minton as on cross-examination. Thus, McManus was afforded two opportunities to cross-examine Minton.

At the second hearing on August 24, 1982, the court heard arguments from both sides and then rendered its decision. This decision was based on the evidence adduced at the February hearing, depositions taken by McManus (but not including the Minton deposition which was not timely filed with the court), investigations of both homes and a talk with Wendy. After the court rendered its decision, counsel for McManus objected that the court did not take further evidence. The court then inquired as to what further evidence McManus wished to present, to which counsel responded that she wished to cross-examine Minton. The court then disallowed this request as McManus had had two prior opportunities to cross-examine Minton. We find no error in this ruling.

### Assignment of Error No. VI

"The trial court abused its discretion and erred as a matter of law when it denied appellant's motion pursuant to Section 3109.29(C) of the Ohio Revised Code to require appellee to pay to the clerk of the court travel and other necessary expenses to enable appellant to appear before the court where, as here, appellee was employed as a long distance truck driver, the minor child had resided in California with her mother until appellee wrongfully retained the child after a visit, appellant continued to reside in California and had no funds of her own to finance the trip to Ohio."

McManus claims that the court erred in not ordering Minton to pay her travel expenses in order to enable her to attend the August 24, 1982 hearing. McManus relies on R.C. 3109.29(C) which provides:

"If a party to the proceeding who is outside this state is directed to appear under division (B) of this section or desires to appear personally before the court with or without the child, the court may require another party to pay to the clerk of the court travel and other necessary expenses for the appearance of the party and the child who are outside this state, if this is just and proper under the circumstances."

This language specifically vests the court with broad discretion over whether to order the payment of another party's expenses. Clearly, the trial court is in a much better position than a court of appeals to determine the relative financial positions of the parties and make a just ruling. There is evidentiary support for the court's decision and we do not find an abuse of discretion.

We overrule all the assignments of error. The judgment is affirmed.

*Judgment affirmed.*

Baird and George, JJ., concur.