THE PEOPLE OF THE STATE OF NEW YORK ex rel. LENORE THRONEBERG, on Behalf of LISA M. BUTCHER, an Infant, Respondent, v EDWARD BUTCHER, Appellant.

Third Department, July 19, 1984

#### APPEARANCES OF COUNSEL

*Feeney & Bruhn* (*Edward T. Feeney* of counsel), for appellant.

*Joseph M. Ingarra* for respondent.

#### OPINION OF THE COURT

LEVINE, J.

The child who is the subject of the instant custody contest was born to petitioner Lenore Throneberg (the mother) and respondent Edward Butcher (the father) on December 5, 1978. Eighteen months later, the father left the mother and the child and, except for a two-month interval, they continued to live separately in the same community until January, 1981, when the father moved to

Oklahoma. In June, 1982, the mother permitted the father to take the child with him to Oklahoma for a visit under his written agreement to return the child by August 31, 1982. The father refused to return the child on the agreed date. In October, 1983, the mother initiated this habeas corpus proceeding to regain custody. Her petition was opposed at Special Term on the grounds that, under the Uniform Child Custody Jurisdiction Act (Domestic Relations Law, art 5-A) (the Act), New York courts lack, or should not exercise, jurisdiction. Special Term held in favor of the mother and this appeal by the father followed.

There should be an affirmance. Although the mother's delay in bringing her application for custody for about 17 months resulted in New York's loss of status as the child's "home state" for jurisdictional purposes (Domestic Relations Law, § 75-d, subd 1, par [a]),* jurisdiction lies in the courts of this State under section 75-d (subd 1, par [b]) of the Act. This provision permits a State court to exercise jurisdiction when it is in the best interest of the child if two criteria are met: "(i) the child * * * and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child's present or future care, protection, training, and personal relationships". Paragraph (b) of subdivision 1 is the least precise of the jurisdictional bases contained in section 75-d. As pointed out in the commissioner's note to the Uniform Act (Uniform Child Custody Jurisdiction Act [9 ULA], § 3, p 124), "[t]he paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description". It would appear that the paragraph is designed to give direction so that New York courts will only exercise jurisdiction if there are sufficient legal and factual contacts with the child and his family to justify a legitimate State interest in the outcome of the dispute, and if sufficient evidence is available upon which the court could make a fair and well-founded determination of custody based upon the best interest of the child.

---

* Under the cited provision, even if the child were absent from this State, New York would have remained her home State if the mother had commenced this proceeding within six months of the start of the visit in Oklahoma.

The circumstances of this case easily satisfy both criteria. The child was born in this State and remained here during the first 3½ of her 5 years of life. New York is also the State of residence of the child's mother, as well as of her extended family on both parental sides. The mother was the child's *de facto* custodian and her legal custodian under the parties' written agreement. A sufficient nexus thus exists to justify New York's legitimate *parens patriae* interest in the dispute. Additionally, there is clearly substantial evidence available within this jurisdiction upon which the court could base an intelligent determination of custody. This includes the observations of friends and relatives, physicians' records and the records and perceptions of teachers and administrators at two child care and educational programs in which the child was enrolled before her visit to Oklahoma. Accordingly, Special Term correctly determined that it had valid jurisdiction over this proceeding under the Act (see *People ex rel. Morgan v Morgan,* 79 AD2d 1060, 1061).

We likewise find no basis upon which a court of this State should decline to exercise jurisdiction under the Act's *forum non conveniens* provision (Domestic Relations Law, § 75-h). Subdivision 3 of section 75-h sets forth various factors to aid in determining whether a New York court should defer to the courts of another State. On balance, these factors weigh in favor of New York as the more appropriate forum State. The circumstances previously alluded to establish that, in terms of the relative time spent by the child at each situs, and the ties of kinship and contacts with other persons in a position to appraise the quality of care by both parents, New York has a closer connection to the child and her family and relevant evidence on the issue of custody is more readily available here (Domestic Relations Law, § 75-h, subd 3, pars [b], [c]).

An additional statutory factor to be weighed is whether "the exercise of jurisdiction by a court of this state would contravene any of the purposes [of the act]" (Domestic Relations Law, § 75-h, subd 3, par [e]). One of the stated purposes of the Act is to "deter abductions and other unilateral removals of children undertaken to obtain custody awards" (Domestic Relations Law, § 75-h, subd 1, par

[e]). According to the draftsman of the Uniform Act, one of its principal purposes was to remove the incentive for the abuse of the right of interstate visitation, i.e., a noncustodial parent retaining a child after a visitation period, and then using the courts of the visited State to obtain a transfer of custody (see Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Cal L Rev 978, 985-986). Pertinent in considering this factor is the mother's averment that the father induced her to consent to the visit in Oklahoma through a written promise to return the child by the end of the summer, that he initially gave her a false Oklahoma address rendering the child temporarily incommunicado, and subsequently cut off contact by telephone because the child expressed the desire to return after each call. None of these assertions was contradicted or explained in the father's papers on the motion. Deference to the jurisdiction of an Oklahoma forum would reward the father's undenied abuse of interstate visitation. Indeed, Oklahoma is a signatory to the Uniform Act (Okla Stats Ann, tit 10, §§ 1601-1628), and based upon the father's conduct, its courts might well apply the discretionary provisions of the Act not to accept jurisdiction (see Domestic Relations Law, §§ 75-h, 75-i, subd 1). For the foregoing reasons, Special Term's denial of the father's motion to dismiss the petition should be affirmed.

MAHONEY, P. J., KANE, YESAWICH, JR., and HARVEY, JJ., concur.

Order affirmed, without costs.