OPINION OF THE COURT
Sheldon M. Rand, J.
The issue before this court is to determine whether Domestic Relations Law, article 5-A, § 75-a et seq. permits an exercise of custody jurisdiction where both petitioner and children have permanent ties to New York City although a similar action is pending in the courts of Switzerland.
STATEMENT OF FACTS
The parties were married in Annapolis, Maryland, in 1976 and divorced in Zurich, Switzerland, on June 8, 1982. They purchased an apartment in New York City, but resided there only sporadically during their marriage. Since May 1983, petitioner, Lotte U., has been residing in New York City with her two children, and they have been enrolled in and have attended school in New York City since May 1983.
Respondent, Leo U., movant herein, is a citizen of Switzerland and presently resides there. Petitioner is living in New York on a tourist visa and is making plans to be sponsored as a permanent resident of this country. According to petitioner’s affidavit in opposition to motion to dismiss, on December 26, 1984, she *897 went to Cannes, France, to visit her parents and took the children with her. On January 7, 1985, the children were abducted from their baby-sitter, Steven H., by two men allegedly hired by respondent. A letter from Mr. H. detailing this incident is attached to Lotte U.’s affidavit and labeled exhibit D. Petitioner found respondent and the children in Switzerland approximately one month later, and retrieved them. There is some dispute as to whether respondent had initially agreed to return the children, but ultimately petitioner admittedly took them by force.
While petitioner was in Switzerland attempting to regain custody of the children, on January 17, 1985, respondent commenced an action to modify the custody and visitation provisions of the Swiss divorce decree in the District Court of Zurich, Switzerland. That action is now pending.
Respondent disputes petitioner’s view of the facts and insists that petitioner abducted the children during the pendency of the Swiss action on February 6, 1985 simply to defeat the jurisdiction of the Swiss courts. Whether or not this court should exercise jurisdiction over the instant action depends upon the version of the facts adopted by the court. This shall be discussed more fully below.
Applicability of Domestic Relations Law, article 5-A, § 75-a et sea.: Uniform Child Custody Jurisdiction Act (UCCJA)
Respondent objects to the jurisdiction of this court based upon the provisions of the UCCJA which prohibit adjudication of a matter pending before the courts of another State in order to ensure uniformity in custody cases and to discourage forum shopping by litigants. (Domestic Relations Law, art 5-A, § 75-b [1] [a]-[i].) However, that law applies only to conflicting State judgments and proceedings. “State” is defined for the purposes of this section as “any state, territory, or possession * * * and the District of Columbia.” (Domestic Relations Law § 75-c [10].) This definition is not inclusive of the country of Switzerland as respondent would have us believe. Thus, it is not mandatory that this court give deference to the action presently pending in Switzerland.
On the contrary, as petitioner indicates, if the UCCJA is applicable herein, its application must be through Domestic Relations Law, article 5-A, § 75-w which governs the act’s application to international disputes. That section states: “The general policies of this article extend to the international area. The *898 provisions of this article relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected parties.”
Thus, the actions of the Swiss tribunal are entitled to deference if its regard for due process parallels that of the courts of this State, and if such deference would further the policies of the UCCJA. Petitioner did appear on January 23, 1985, before the District Court of Zurich, Switzerland, and admitted to maintaining a residence in that country. However, she had only minimal contact with that abode in recent years, and her children are now firmly entrenched in the City of New York. In her affidavit in opposition to motion to dismiss petitioner briefly alludes to a failure of notice, yet no emphasis is placed on that failure in the memorandum of law submitted by the petitioner. No evidence has been submitted which would indicate that petitioner contested jurisdiction before that tribunal, nor is there any evidence that a mechanism by which one can contest personal jurisdiction is unavailable in the District Court of Zurich, Switzerland.
Moreover, it is alleged in respondent’s reply affirmation in support of his motion to dismiss, that petitioner had signed a retainer agreement with a Swiss attorney on January 25,1985, in order to be represented in the Swiss action. As respondent indicates, under Judiciary Law of the Canton of Zurich § 176, service of process upon counsel is sufficient where a party is duly represented. However, no evidence of such service of process has been submitted by respondent. It appears likely though that petitioner submitted to the jurisdiction of the Swiss court by testifying.
Despite this weakness in petitioner’s arguments, there still remains very strong indication that the jurisdiction of this court is, indeed, appropriate. If, in fact, petitioner was in lawful custody of the children while visiting her parents in Cannes, then no court would condone respondent’s abduction of the children by asserting custody jurisdiction over a parent who has been forced into that jurisdiction in order to find and secure her children. Indeed, the very purpose of the UCCJA is to discourage just such tactics. It is this principle which must be foremost in the mind of the court in determining whether or not deference be given to the actions of a foreign tribunal. It is this state of facts which seems the most likely, given the statements, albeit unsworn, of Steven H., the baby-sitter from whom the children were allegedly abducted in Cannes.
*899 On the other hand, respondent claims that petitioner abducted the children from him in Switzerland when she felt that the Swiss tribunal would not rule in her favor. This version of the facts of this case would necessitate deference to the foreign court based on the principles previously enunciated. However, given the fact that (1) respondent held the children without notifying their mother of their whereabouts; (2) prohibited them from any contact with their mother; and (3) that the children were prohibited from attending their school during this time, it seems that respondent is á less credible affiant than is petitioner.
Lastly, as petitioner indicates in her memorandum of law, Swiss custody jurisdiction is based solely on the domicile of the father, and recognizes the status of the children as that of their father. Since this is counter to the bases of custody jurisdiction espoused by this court (Matter of Leslie L. F. v Constance F., 110 Misc 2d 86 [Fam Ct, NY County 1981] [children’s residence is determinative of custody jurisdiction]) it appears that the UCCJA should not compel this court to refuse the matter sub judice.
Even if the UCCJA might otherwise discourage an exercise of this court’s jurisdiction, Domestic Relations Law, article 5-A, § 75-d (1) (b) permits jurisdiction if: “it is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is within the jurisdiction of the court substantial evidence concerning the child’s present or future care, protection, training, and personal relationships”.
By reason of the above criteria, the court finds sufficient contact with the State of New York by petitioner and her children to mandate jurisdiction notwithstanding the fact that an action is pending in the District Court of Zurich, Switzerland. The children are both in attendance at a school within the City of New York, and have been since May 1983, well before contemplation of this litigation. In addition, since May 1983, petitioner and her children have resided at the same address within this city and have become firmly connected to New York. Moreover, it appears that any witnesses who would be called to testify regarding the welfare of the children over the past two years would be residents of the City of New York. School officials who could testify to the academic performance and attendance records of the children, the child psychiatrist who could testify as to the younger child L.’s welfare, and neighbors who could testify *900 as to the children’s treatment and behavior would all be located within the City of New York. The matter is set down for hearing on July 26, 1985, Part VI.