■ In the Matter of SHERYL VAN HOUTEN, Respondent, v KEVIN P. VAN HOUTEN, Appellant. (Proceeding No. 1.) In the Matter of KEVIN P. VAN HOUTEN, Appellant, v SHERYL VAN HOUTEN, Respondent. (Proceeding No. 2.)—In related proceedings pursuant to Family Court Act article 6, inter alia, to enforce an out-of-State judgment fixing custody, the father appeals (1) from an order of the Family Court, Orange County (Ludmerer, J.), entered August 1, 1989, which, after a hearing, inter alia, granted the mother's application to enforce the custody provision of a Florida divorce decree, dated August 24, 1981, inter alia, awarding custody of the parties' child to her, and denied his application to appoint a Law Guardian (proceeding No. 1); and (2) from an order of the same court, dated October 23, 1989, which declined to exercise jurisdiction over the father's petition which was for a transfer of custody of the child to him (proceeding No. 2).

Ordered that the orders are reversed, in the exercise of discretion, without costs or disbursements; and it is further,

Ordered that the matters are consolidated with the petition in proceeding No. 2 deemed the cross petition; and it is further,

Ordered that the matter is remitted to the Family Court, Orange County, for (a) the appointment of a Law Guardian to represent the child, and (b) a hearing in accordance herewith; and it is further,

Ordered that the child is to remain in the custody of the

mother, who is directed to remain in the State, pending determination of the parties' respective petitions.

In 1981, the father filed, in the Circuit Court for Escambia County, Florida, a petition for dissolution of his marriage to the mother, wherein he consented to the mother being granted custody of the parties' nearly two-year-old daughter, subject to his rights of reasonable visitation. At the father's request, on June 17, 1981, a temporary restraining order was issued by that court, prohibiting either party from removing the child from the jurisdiction pending a hearing. On July 6, 1981, after a hearing, another temporary order was issued restraining both parties from removing the child from the jurisdiction. The order further awarded custody of the child to the mother conditioned upon her securing a place to live; in the interim, the father was granted temporary custody. Approximately, two days later, the mother attempted to claim her daughter, at which point she discovered that her estranged husband had left the jurisdiction with the child. About six weeks later, on August 24, 1981, and after a warrant for the father's arrest had been issued, the Florida court entered a final judgment dissolving the marriage, after a hearing at which the father failed to appear. The judgment awarded custody of the child to the mother, subject to the father's right of reasonable visitation. As to the latter, it directed that, "[t]he Husband, when exercising his rights of visitation shall not conceal the whereabouts of the child nor remove the child from the jurisdiction of this court". The following day, a contempt order against the father was issued, sentencing him to six months in jail for his violation of the temporary order dated July 6, 1981.

For the next eight years, the mother, who moved to Alabama, attempted unsuccessfully to locate her daughter. During this time, the father relocated quite frequently, to at least five different residences in three different States, prior to moving to New York in October 1988. While he would occasionally telephone the mother, he refused to allow her to speak with the child.

Upon receiving information as to her child's whereabouts early this year, the mother sought to have the Florida warrant for the father's arrest executed. She was advised that the Statute of Limitations had expired, and, hence, the State would not be able to successfully prosecute him.

Accordingly, the mother instituted a proceeding in New York seeking enforcement of the custody provision of the Florida judgment of divorce. The father filed a petition seek-

ing modification of the Florida judgment, asserting, *inter alia,* that a change in circumstances, i.e., his daughter's having lived with him for eight years, warranted awarding custody to him, and that it would be in the best interest of the child if he were to be awarded custody.

After a hearing on the parties' respective petitions, during which the father, for the first time, leveled charges regarding the maternal grandfather's history of child molestation and the alleged potential threat to his daughter should the child be returned to her mother, and two in camera hearings with the child, the Family Court determined that it would enforce the custody provision of the Florida judgment and directed that the child remain with the mother. The court ultimately declined to exercise jurisdiction over the father's application for a transfer of custody because of his opprobrious conduct *(see,* Domestic Relations Law § 75-i).

We conclude that the courts of this State should exercise their jurisdiction over this custody matter, and the Family Court is directed to do so. The courts of this State are bound to recognize and enforce the final judgment of the Florida court awarding custody to the mother (Domestic Relations Law § 75-n; 28 USC § 1738A [a]), should the father be unsuccessful in his efforts to establish its procedural infirmity *(see,* Domestic Relations Law §§ 75-e, 75-m; 28 USC § 1738A [e]). A proper jurisdictional predicate upon which the courts of this State may entertain the father's petition for modification of the Florida judgment exists since New York is the "home state" of the child (Domestic Relations Law § 75-d [1] [a]). Moreover, our courts are not required to defer to the Florida courts since no jurisdictional basis exists in the absence of a connection between the parties or the child to that State (Domestic Relations Law §§ 75-d, 75-o [1]; 28 USC § 1738A [d]).

The New York courts may, nevertheless, properly decline to exercise their jurisdiction pursuant to Domestic Relations Law § 75-i, which dictates in pertinent part that

"the court *shall not* exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody * * *.

*"unless required in the interest of the child"* (Domestic Relations Law § 75-i [2] [emphasis added]).

While the policy consideration of discouraging abductions is a compelling one (see, Domestic Relations Law § 75-b [1] [e]; *People ex rel. Throneberg v Butcher,* 102 AD2d 693, 696), we conclude that this is one of those rare instances where this imperative must be subordinated to the best interests of the child, and that the courts of this State should assume jurisdiction over the dispute and render a prompt determination with respect to the parties' respective petitions, thereby putting an end to the judicial and emotional limbo to which this child has been subjected (see, *Matter of Nehra v Uhlar,* 43 NY2d 242; *Matter of Massey v Massey,* 89 AD2d 566; *Marlow v Marlow,* 122 Misc 2d 221).

Finally, in view of the circumstances presented in this case, we believe it would be in the best interests of the child to be represented by a Law Guardian in any further proceedings, and the Family Court is directed to make such an appointment. Mollen, P. J., Brown, Rubin and Sullivan, JJ., concur.