**STATE of Missouri, ex rel., Ahalaam Smith RASHID, Relator,**

v.

**The Honorable Bernhardt C. DRUMM, Jr., Judge, Division 4, St. Louis County Circuit Court, Respondent.**

No. 61142.

Missouri Court of Appeals, Eastern District, Writ Division Two.

Feb. 11, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 9, 1992.

Margo L. Green, Daniel P. Card, II, Love, Lacks & Paule, St. Louis, for relator.

Charles Willis, St. Louis, for respondent.

CRANE, Presiding Judge.

Ahalaam Smith Rashid, mother, a United States citizen and resident of St. Louis County, brought a dissolution of marriage action against Adel Mohammed Zaghdi, father, a citizen and resident of Saudi Arabia, in the Circuit Court of St. Louis County. In the action mother sought custody of the parties' six year old daughter, Amirah Adel Zaghdi, a dual citizen whose home was in Saudi Arabia but was physically present in St. Louis County at the commencement of the proceedings. Mother was given temporary custody of the child *ex parte*. Father filed a motion to set aside the temporary custody order on the grounds of fraud. The trial court treated the motion as a challenge to the jurisdiction of the court to determine child custody. After a two day hearing, the trial court, applying the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA) as enacted in Missouri, § 452.440 *et seq.*, ruled that it did not have jurisdiction to exercise custody jurisdiction and that Saudi Arabia did have jurisdiction, and ordered the child returned to the custody of the father. Mother filed this writ of prohibition to prevent dismissal of the custody proceeding. We granted a provisional writ which we now make absolute on the grounds that the trial court abused its discretion by finding it had no jurisdiction without considering the best interests of the child with respect to a forum under § 452.450.1(4) RSMo 1986.

## FACTUAL BACKGROUND

The facts relevant to the issues presented by this writ are undisputed. Mother and father were married on July 28, 1984, in St. Louis County, Missouri, and lived for a short time after the marriage in Belleville, Illinois. Father, a Saudi Arabian citizen, was in this country as a student. In August, 1984, they moved to Lansing, Michigan for two years while father continued his studies. Their daughter Amirah was born in Michigan on September 15, 1985. The family continued to reside in Lansing, Michigan until August, 1986, when father graduated from Lansing Community College and returned to Saudi Arabia. Mother and Amirah returned to St. Louis, Missouri in August, 1986. They remained in St. Louis, Missouri, until December 5, 1986, when they left to join father in Saudi Arabia. The family lived together in Saudi Arabia until March 25, 1987, when mother returned to the United States alone for a seven month visit with her family. Mother returned to Saudi Arabia in October, 1987, and lived with father and Amirah until the beginning of 1988.

Mother left Saudi Arabia through the assistance of the American Embassy on February 13, 1988, and returned to the St. Louis area. Amirah remained in Saudi Arabia with father. Subsequently, father took another wife in Saudi Arabia. On September 19, 1991, father and Amirah came to the United States to visit mother. Upon their arrival in St. Louis, father and Amirah went with mother to the hotel where father was registered. While father was getting his room key, mother left the hotel with Amirah without father's knowledge or consent and kept Amirah with her until she was ordered to produce Amirah in court on November 4, 1991.

## PROCEDURAL HISTORY

According to the pleadings there have been no custody or dissolution proceedings relating to this child or to this marriage except those that have been filed in St. Louis County. No proceedings have been instituted in Saudi Arabia nor has any prior decree relating to the custody of the child been entered by any court of any state or foreign country.

On October 31, 1990, mother filed a Petition for Dissolution of Marriage in the Circuit Court of St. Louis County in Cause Number 616940, seeking a dissolution of the marriage and the award of custody of Amirah to father. Mother filed an Amended Petition on August 26, 1991, seeking custody of Amirah for herself. Mother moved to dismiss Cause Number 616940 on

September 20, 1991, on the grounds that father had never been served. She filed a new Petition for Dissolution of Marriage on September 20, 1991, in Cause Number 629059 and obtained personal service on father. Mother alleged that she had custody of Amirah in St. Louis County and sought permanent custody. She also sought and obtained an order *ex parte* granting her temporary child custody. Father filed his Answer, Cross Petition for Dissolution of Marriage, and Motion for Custody Pendente Lite in this Cause on October 28, 1991.

On November 1, 1991, father moved to set aside the temporary custody order on the grounds that it had been obtained by fraud. The trial court treated this as a motion to dismiss the custody determination for lack of jurisdiction. It heard evidence on this issue on November 13 and November 18, 1991, and entered its order sustaining the motion to dismiss. It delayed the effective date of its order to give the parties time to file an application for a writ.

In its order the trial court made the following conclusions:

1. This state is not the home state of the child and was not the home state of the child when this proceeding commenced on September 20, 1991.

2. This state had not been the child's home state within six months prior to the commencement of this proceeding.

3. The child does not have a significant connection with this state.

4. There is not available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

5. The child has not been abandoned.

6. The child has not been mistreated or abused.

7. The child has not been threatened with mistreatment or abuse.

8. The child is not being neglected and has not been neglected.

9. Although no other state has child custody jurisdiction and no other state has declined to exercise child custody jurisdiction, the Courts in Saudi Arabia have jurisdiction. Although not enacted in this State, Section 23 of the Uniform Child Custody Jurisdiction Act provides that "the general policies of (the) Act extend to the international area."

10. It is just and proper under the circumstances for the Courts of this state to decline to exercise jurisdiction.

The court further concluded, "[p]ursuant to §§ 452.450 and 452.475, RSMo, this Court does not have jurisdiction to make a child custody determination by initial decree."

## AVAILABILITY OF UCCJA IN MISSOURI TO DETERMINE JURISDICTION IN AN INTERNATIONAL CUSTODY CASE

Mother first claims the trial court exceeded its jurisdiction in deciding this matter under the UCCJA because the UCCJA, as adopted in Missouri, does not include Section 23 of the uniform act. This section extends the general policies of the act to the international area and provides for recognition and enforcement of custody decrees of other nations under certain circumstances.[1] The Comment to that section provides that the first sentence makes the general policies of the Act applicable to international cases. "This means that the substance of section 1 (not adopted in Missouri) and the principles underlying provisions like sections 6, 7, 8 and 14(a) are to be

---

1. This section reads:
   **§ 23. [International Application]**
   The general policies of this Act extend to the international area. The provisions of this Act relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.
   Unif. Child Custody Jurisdiction Act § 23, 9 U.L.A. 326 (1968).

followed when some of the persons involved are in a foreign country or a foreign custody proceeding is pending." UNIF. CHILD CUSTODY JURISDICTION ACT § 23 comment, 9 U.L.A. 326–27 (1968).

The failure of a state legislature to adopt § 23 has been held to express an intent not to require the enforcement of foreign custody decrees. *Minton v. McManus*, 9 Ohio App.3d 165, 458 N.E.2d 1292, 1294 (1983). However, we have not been referred to, nor have we found, any case which addresses what a state legislature, by omitting § 23, intends with respect to the application of the other provisions of the UCCJA to an original custody dispute involving a resident of a foreign country.

The trial court used the jurisdictional provisions of the UCCJA (§ 452.450 RSMo 1986 and UCCJA § 3) and the "clean hands" provision (§ 452.475 RSMo 1986 and UCCJA § 8) to determine whether it had jurisdiction. The trial court specifically held in its order "[p]ursuant to §§ 452.-450 and 452.475 this court does not have jurisdiction to make a child custody determination by initial decree."

## 1. Availability of § 452.450 to determine jurisdiction

■■■ We will first consider whether the trial court could use § 452.450 to determine if it had jurisdiction. As enacted in Missouri, this section provides that a Missouri court which is competent to decide child custody matters has jurisdiction to make a child custody determination if one of four possible jurisdictional bases exists. This section is a procedural statute which does not create any new substantive rights for any of the parties but merely dictates the forum where custody actions will be heard. *Elliott v. Elliott*, 612 S.W.2d 889, 892 (Mo. App.1981). The statute supersedes prior Missouri practice under which the courts used the test set out in § 79 of the Restatement Second, Conflict of Laws, to determine child custody jurisdiction. *Id.* at 893.

The statute provides four possible bases for jurisdiction, commonly referred to as the (1) home state (2) significant connection (3) emergency and (4) default or vacuum bases. It recognizes *parens patriae* jurisdiction under restricted conditions and incorporates the longstanding Missouri public policy supporting jurisdiction where the best interests of the child are served. *See Kennedy v. Carman*, 471 S.W.2d 275, 281–87 (Mo.App.1971).[2] This jurisdictional provision is sufficiently comprehensive that it may be used to determine jurisdiction irrespective of whether a resident of a foreign country is involved. Moreover, custody decrees made pursuant to the UCCJA are recognized and enforced in other states which have adopted the UCCJA. § 452.500 RSMo 1986; UCCJA § 13. The trial court acted within its authority in using § 452.-450 to determine if it had jurisdiction in this international child custody matter.

## 2. Availability of § 452.475 to determine jurisdiction

■■ We next consider the trial court's use of the "clean hands" provision of § 452.475 to determine whether it had jurisdiction. This section provides, with respect to an initial decree:

> If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

Section 452.475.1 RSMo 1986. We do not need to reach the question whether this section is applicable to an international child custody dispute, because the doctrine of unclean hands does not affect a court's jurisdiction but only the court's decision whether it should or should not exercise jurisdiction. 1 McCAHEY, KAUFMAN, KRAUT & ZETT, CHILD CUSTODY AND VISITATION LAW PRACTICE § 4.08[1][2] (1991). This section provides a basis to *decline* otherwise exist-

---

**2.** "The UCCJA deliberately provided for jurisdictional flexibility to insure procurement of its dominant concern, the best interests of children. Some stability and certainty as to child custody jurisdiction was sacrificed where the best interests of the child presumably call for an assumption of jurisdiction by a state other than the home state." Foster, *Child Custody Jurisdiction: UCCJA and PKPA,* 27 N.Y.L.SCH.L.REV. 297, 302 (1981).

ing jurisdiction, not to determine jurisdiction, thus the court improperly relied on this section in finding that it had no jurisdiction.

### 3. Declination of Jurisdiction under § 452.475

■ Father argues that the trial court declined jurisdiction under § 452.475 and that it was within its discretion to do so. We do not read the trial court's order as a declination of jurisdiction. The court explicitly concluded that "this court does not have jurisdiction to make a child custody determination by initial decree." In its finding number 10, the court ruled it was just and proper under the circumstances for the courts of this state to decline jurisdiction. However, the trial court did not go on to decline jurisdiction. Moreover, once the court found it had no jurisdiction, it could not "decline" jurisdiction it did not otherwise have.

In any event, even if the trial court was inartfully attempting to decline jurisdiction under the clean hands provision, its attempt failed. In order for the court to decline under this section, it would have to have found that petitioner had wrongfully taken the child from another state or have engaged in similar reprehensible conduct. Although there was evidence in the record that mother had secreted the child from the father, the court made no finding in its otherwise detailed order that this or any other conduct constituted "reprehensible conduct" or even if this was the basis for the court's finding that it would be proper to decline jurisdiction.

■ More importantly, however, the court did not consider whether declination would be in the best interests of the child. The "clean hands" provision is a discretionary ground for denying jurisdiction and does not supersede the best interests of the child. *Snow v. Snow,* 369 N.W.2d 581, 583 (Minn.Ct.App.1985); *O'Neal v. O'Neal,* 329 N.W.2d 666, 669 (Iowa 1983). The paramount issue is the welfare of the child rather than the tactics of the parents. It is

error to decline jurisdiction on the basis of a parent's conduct without considering the best interests of the child. *Nehra v. Uhlar,* 168 N.J.Super. 187, 402 A.2d 264, 268–69 (N.J.Super.Ct.App.Div.1979). *See also Van Houten v. Van Houten,* 156 A.D.2d 694, 549 N.Y.S.2d 452, 454 (1989).

If § 452.475 applies to an international custody dispute in Missouri, and if the trial court had found it otherwise had jurisdiction, the trial court would have had discretion to decline jurisdiction under that provision, only if it found reprehensible conduct and that declination would be in the best interests of the child. However it did not make these findings in support of declining jurisdiction. There was no valid declination of jurisdiction by the trial court.

## APPLICATION OF § 452.450 OF THE UCCJA TO THIS ACTION

■ Alternatively, mother argues that if § 452.450 is used to determine subject matter jurisdiction in this custody proceeding, the trial court had jurisdiction under § 452.450.1(4) because no other state had jurisdiction and it is in the best interests of the child that the Missouri court assume jurisdiction.[3] We find the trial court misapplied the law in determining it had no jurisdiction. The trial court could not, as a matter of law, treat Saudi Arabia as a "state" under this section. In addition, it abused its discretion in determining it had no jurisdiction without considering the best interests of the child with respect to a forum.

Subsection (4) of § 452.450.1, is the "default" or "vacuum" basis of jurisdiction, which provides:

It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

---

**3.** Mother does not attack the trial court's findings 1–8 which would support a finding that the trial court did not have jurisdiction under § 452.450.1(1)–(3).

The comment to this section in the UCCJA provides: "Paragraph (4) of subsection (a) provides a final basis for jurisdiction which is subsidiary in nature. It is to be resorted to only if no other state could, or would, assume jurisdiction under the other criteria of this section." UNIF. CHILD CUSTODY JURISDICTION ACT § 3 comment, 9 U.L.A. 145 (1968).

In its finding number 9, the trial court found that although no other state has child custody jurisdiction, "the Courts in Saudi Arabia do have jurisdiction" and "the policies of (the) act extend to the international area" under § 23 of the UCCJA. The term "state" as used in the UCCJA has been held not to include foreign nations where the legislature has not adopted § 23 of the UCCJA. *Minton,* 458 N.E.2d at 1294.[4] Since Missouri has not adopted § 23 of the UCCJA, it is clear that the legislature did not intend the word "state" as used in § 452.450 to include a foreign country. Because "state" does not include a foreign country under § 452.450.1(4) and because Missouri has not adopted § 23 of the UCCJA, Saudi Arabia as a matter of law cannot have jurisdiction either as a "state" or under the policy provisions of § 23 of the UCCJA.

Two elements of jurisdiction under § 452.450.1(4) were met. No other state had jurisdiction and the child was physically present in the state at the commencement of the proceedings.[5] In order to determine if it had jurisdiction under § 452.-450.1(4), the trial court was then required to address the best interests of the child. *Creavin v. Moloney,* 773 S.W.2d 698, 704–705 (Tex.Ct.App.1989); *In re Marriage of Arnold,* 222 Cal.App.3d 499, 271 Cal.Rptr. 624 (1990).

■ The determination of the best interests of the child under § 452.450.1(4) refers to a choice of a forum, not to the fitness of the parents. *See, State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 278 (Mo.App. 1987) (interpreting phrase as used in § 452.450.1(2)). As an initial matter it must be determined if there is any other forum which can and will adjudicate the custody proceedings. This is significant because, if there is no other forum which can and will adjudicate custody, then the best interests of the child are served by a custody determination in the forum where the child is physically present. *Dobyns v. Dobyns,* 650 S.W.2d 701, 707 (Mo.App. 1983). *See also, Massey v. Massey,* 89 A.D.2d 566, 452 N.Y.S.2d 101, 103 (1982); *McFaull v. McFaull,* 560 So.2d 1013, 1014 (La.Ct.App.1990); *Schmidt v. Schmidt,* 227 N.J.Super. 528, 548 A.2d 195, 198–99 (N.J.Super.Ct.App.Div.1988); *Creavin,* 773 S.W.2d at 704.[6]

---

4. Jurisdictions which have adopted § 23 take different approaches to the question of whether or not the word "state" includes a foreign country. *See e.g. Klein v. Klein,* 141 Misc.2d 174, 533 N.Y.S.2d 211 (N.Y.Sup.Ct.1988) (Israel not a "state" within the definition of the statute); *Massey v. Massey,* 89 A.D.2d 566, 452 N.Y.S.2d 101 (1982) (Quebec, Canada not a state); *In re Marriage of Arnold,* 222 Cal.App.3d 499, 271 Cal.Rptr. 624 (1990) (Canada a "state" because UCCJA has international application). In those jurisdictions which have adopted § 23, but do not include a foreign country in the definition of "state," deference to the laws of other nations under the UCCJA is decided on the basis of whether child custody law in the foreign country is similar to the UCCJA, *see, Lotte U. v. Leo U.,* 128 Misc.2d 896, 491 N.Y.S.2d 581 (N.Y.Fam. Ct.1985) (Jurisdiction of Switzerland not recognized because based solely on domicile of father); *Suarez Ortega v. Pujals de Suarez,* 465 So.2d 607, 609 (Fla.Dist.Ct.App.1985) (Mexico would exercise jurisdiction in accord with principles embodied in UCCJA); *Klont v. Klont,* 130 Mich.App. 138, 342 N.W.2d 549, 550–51 (1983)

(West Germany exercised jurisdiction in accord with principles of UCCJA), and whether basic due process is observed. *Garza v. Harney,* 726 S.W.2d 198, 200 (Tex.Ct.App.1987).

5. *See* § 452.450.2 (UNIF. CHILD CUSTODY JURISDICTION ACT § 3(b), 9 U.L.A. 144 (1968)). "Physical presence of the child may also be sufficient for a residual jurisdiction provided by section 3(a)(4) of the Act to assure the parties of a forum when no other court has or is prepared to exercise jurisdiction under the two main criteria of the Act." Bodenheimer, *The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws,* 22 VAND. L.REV. 1207, 1230 (1969). *See also,* Blakesley, *Child Custody Jurisdiction and Procedure,* 35 EMORY L.J. 291, 300 (1986).

6. Contrary to the assertion in the dissent, some of these cases involve situations in which the child had been in this country on a transitory basis for a very short time. In *Schmidt* the child had been living in West Germany, and was

The fact that no other state has jurisdiction is not dispositive of the question of the availability of another forum. Although Missouri has not extended the UCCJA to the international area, the paramount concern of Missouri in a custody proceeding is the best interests of the child. These interests may require that custody be determined by the courts of a foreign country. Accordingly, a Missouri court may find that a court of a foreign country is an available forum to adjudicate custody. The trial court did conclude that the courts of Saudi Arabia had jurisdiction. However, this conclusion was based on a misinterpretation of law and not on a determination of which forum was in the best interests of the child after considering relevant factors.

Although relevant factors will vary on a case by case basis, in this case the primary inquiry is whether there is an available foreign forum which would have jurisdiction substantially in accord with the principles in the UCCJA. *Suarez Ortega,* 465 So.2d at 609; *Klont,* 342 N.W.2d at 550–51. In determining whether a foreign forum is available, consideration must be given to whether the foreign forum could and would adjudicate the controversy. *See, e.g.* § 452.470.3 (UNIF. CHILD CUSTODY JURISDICTION ACT § 7(d), 9 U.L.A. 233 (1968)) (applying these factors in the *forum non conveniens* situation). *See also, Creavin,* 773 S.W.2d at 704 (Ireland was not an available forum where, because absolute divorce cannot be obtained in Ireland, the courts in Ireland do not have any power over the children of a marriage). Another factor is whether minimum due process, including notice and the opportunity to be heard, will be accorded in the foreign proceeding. *See Schmidt,* 548 A.2d at 198; *Klont,* 342 N.W.2d at 550–51; *Al–Fassi v. Al–Fassi,* 433 So.2d 664, 666 (Fla.Dist.Ct.App.1983).[7] A further factor is whether the foreign forum will be guided by the best interests of the child in awarding custody. *See, Al–Fassi,* 433 So.2d at 668. If there is an available foreign forum meeting this criteria, then the court should consider which forum has the strongest basis for jurisdiction under § 452.450.1.

■ The trial court did hear evidence relating to the child's ties to and home in Saudi Arabia, but there was no evidence relating to child custody laws in Saudi Arabia, whether courts there could and would adjudicate the controversy, if minimum due process would be accorded all parties to the proceedings, or if the best interests of the child would guide the custody determination. It did not make any findings on the best interests of the child with respect to a forum. Without considering these factors and making a determination of the best interests of the child, the court exceeded its authority in finding that it had no jurisdiction under § 452.450 and that the courts of Saudi Arabia had jurisdiction over this child custody proceeding. Likewise, without evidence on these factors the record is insufficient for us to reach the question of whether the trial court does or does not have jurisdiction under this section.

Although the trial court exceeded its authority in determining it had no jurisdiction on the record before it, the trial court is not prohibited from reexamining the question of jurisdiction on a proper record. Such a record would include evidence on whether there is another available forum. Such an inquiry would encompass consideration of the following factors:

1. Whether that forum would have jurisdiction substantially in accord with the principles of the UCCJA.

2. If that forum could and will adjudicate the custody matter.

---

taken to New Jersey without notice to his father by his mother, who filed a custody petition the day they arrived in New Jersey. In *Massey* the child had been living in Canada with her mother. She came to New York to visit her father and he refused to return her. The New York custody proceeding was commenced 10 days after her arrival in New York.

7. These cases and the previous cases cited in this paragraph are all cases arising in jurisdictions in which the UCCJA has international application. Although Missouri has not adopted UCCJA § 23, if a Missouri court is going to recognize foreign country jurisdiction under a best interests of the child analysis, the minimum standards used in these other jurisdictions should apply.

3. Whether that forum would accord minimum due process including notice and the opportunity to be heard.

4. Whether that forum would decide custody on the best interests of the child.

If there is another available forum then the court should consider which of the available forums has the strongest basis for jurisdiction in accordance with the principles in § 452.450.1.

■ It is mother's burden, as the proponent of jurisdiction, to establish a *prima facie* basis of jurisdiction. *State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 277 (Mo. App.1987). Although mother did not make that record at the first hearing below, she is not precluded from doing so in a future proceeding. *Kilgore v. Kilgore,* 666 S.W.2d 923, 932–34 (Mo.App.1984). The prior hearing in the trial court proceeded under a misunderstanding of law on the part of all participants due to the lack of judicial precedent governing jurisdiction of international custody disputes in a state which had not adopted the international provisions of the UCCJA.[8] The best interests of the child require that the trial court determine where jurisdiction properly lies and that a court with jurisdiction will adjudicate custody.

■ In determining the best interests of the child with respect to forum, evidence relating to the best interests of the child with respect to custody is irrelevant. Such evidence is only appropriate in a hearing to determine custody. Furthermore the jurisdictional issue is limited to determining whether another forum is available with jurisdiction which will determine the child custody issue in accord with minimum due process and award custody on the basis of the best interests of the child. Collateral matters relating to the culture, mores, customs, religion, or social practices in that other forum are not only irrelevant to the question of jurisdiction but also such cultural comparisons have no place in the ultimate custody award. *See e.g. Waites v. Waites,* 567 S.W.2d 326, 333 (Mo. banc 1978).

The provisional writ of prohibition is made absolute.

SATZ, J., concurs.

SMITH, J., dissents in separate attached opinion.

SMITH, Judge, dissenting.

I respectfully dissent.

Some additional exposition of the facts which were either not disputed or which were supported by evidence and supportive of the trial court's order is warranted.

While the parties were married in St. Louis County they never resided in Missouri during the marriage. The return of mother and daughter to St. Louis for three or four months in 1986 was to enable father to obtain the necessary visas and other documentation for the movement of mother and daughter to Saudi Arabia. St. Louis was not intended to be the domicile for either. During the marriage mother converted to the Islamic faith. In preparation for that conversion she studied the religious documents and tenets of that faith including its doctrines concerning the status and treatment of women. During the time the daughter lived in Saudi Arabia, nearly five years, mother lived with her for approximately six months, and did not reside with the child after the child was 2 and ½ years old. The circumstances under which the mother left Saudi Arabia were sharply contested. Her testimony placed the cause upon physical and/or mental abuse by the father. His testimony indicated marital problems and her dissatisfaction with social conditions involving women in that country. The court was free to credit the father's testimony. The daughter speaks only Arabic and is Islamic by religion. She attends school in Saudi

8. Mother apparently proceeded under the premise that the UCCJA did not apply because § 23 had not been adopted in Missouri and that therefore § 79 Restatement Second, Conflict of Laws would apply under which child's mere physical presence in the state and/or presence of the parents in the state was sufficient grounds for jurisdiction. Although we have rejected it, her position that prior law would govern was not without some logical support.

Arabia. She is, in addition to her American citizenship by virtue of her birth here, a Saudi citizen by virtue of her father's citizenship.

After mother's final return to this country, father visited her on several occasions while she was hospitalized for mental problems. He did not bring the daughter with him on those visits. There is evidence in the record that these hospitalizations followed suicide attempts. There is also evidence that husband attempted to reconcile on several occasions. These attempts were unsuccessful. Father's marriage to a second wife is permissible under the laws of his country and that was known to mother prior to her marriage to father.

Father came to St. Louis with the daughter in order to allow a visitation with the mother and for the family to return to Saudi Arabia. Mother arranged for this flight after representing her intention to reconcile. At the time of the return a petition for dissolution of marriage, filed by the mother, was pending in St. Louis county. The original petition sought custody to be placed with father with reasonable visitation for the mother. Father had received a copy of that petition. The record does not reflect that father received a copy of the amended petition requesting custody be placed in mother. Mother met father and daughter at the airport. They proceeded to a hotel arranged for by mother. A mix-up occurred with the keys to father's room and he returned to the lobby to obtain the correct keys. During his absence mother took the daughter and left in a taxicab leaving no indication of her destination. Father went to the home of mother's mother where he was promptly served with the present petition for dissolution seeking custody in the mother, the prior petition having been dismissed by mother shortly prior thereto. Mother then obtained, *ex parte*, an order of temporary custody and an adult abuse order preventing father from contacting mother or daughter. Mother subsequently refused to produce the child until a body attachment was issued.

Father is employed full-time by Saudi Arabia Air Lines. He is, pending resolution of this matter, on "open vacation" from that company. Mother is unemployed. She has in the past been a student at several different educational institutions. Her support comes from Social Security disability benefits arising from her mental problems and includes benefits she obtained for her daughter after she took custody at the hotel. The record does not indicate whether she is entitled to and is receiving the benefits during the pendency of this matter while the child is in foster care. Mother professes that the mental disability no longer exists but that she remains entitled to the benefits so long as she maintains her status as a student. Mother receives continuing medical treatment as a manic depressive.

Initially, I am unable to concur in the conclusion that the trial court did not decline jurisdiction under the provisions of § 452.475, RSMo 1986. The court specifically stated in paragraph 10 of its order that it was declining jurisdiction. The language utilized was "It is *just and proper under the circumstances* for the Courts of this state to decline to exercise jurisdiction." (Emphasis supplied). The statute involved provides that the "court may decline to exercise jurisdiction if this is *just and proper under the circumstances.*" (Emphasis supplied).[1] I find it more than coincidental that the court utilized the exact statutory language found in § 452.475 in expressing its declination of jurisdiction. It is hypertechnical to hold that the failure to expressly cite the statute in paragraph 10 establishes non-reliance on that statute in declining jurisdiction when the language utilized to decline jurisdiction is taken verbatim from the statute. Furthermore the court specifically referred to § 452.475 in the following paragraph where it stated it did not have jurisdiction. Section 452.475 deals exclusively with *declination* of jurisdiction not absence of jurisdiction. I cannot accept that the trial court did not recog-

---

1. Nothing in the statute conditions that declination on a determination that the best interests of the child require adjudication in this forum.

nize that. The court's finding that "pursuant to §§ 452.450 and 452.475, RSMo, this Court does not have jurisdiction to make a child custody determination by initial decree" was, in my opinion, simply a shorthand means of invoking both statutes thereby expressing its finding that it lacked jurisdiction *and* was declining jurisdiction. This is reinforced by the fact that the matter, as it came before the court, was on the motion of the father to dismiss the request for custody on the basis of fraud and reprehensible conduct, the latter of which is the ground for declination of jurisdiction set forth in the statute. The trial court regarded this motion as a request to dismiss for lack of jurisdiction and much of the evidence adduced at the hearing dealt with that subject matter. The issue was before the court and the court's order was, in my opinion, based at least in part, on its finding of "reprehensible conduct" under § 452.475.

Such a finding is fully supported by the evidence. Father was lured into the jurisdiction under a misrepresentation that mother wanted to reconcile and return to Saudi Arabia. The child was brought so mother and child could visit. The only document concerning custody of which the father was apparently aware was mother's initial petition for dissolution requesting custody in the father. Within an hour after arrival in St. Louis mother spirited the child away without advice as to the child's location. Within a matter of hours the new petition for dissolution seeking custody in the mother was served on the father when he sought to locate the child through mother's mother. The trial court could well conclude that the actions of the mother were the product of a predetermined scheme to fraudulently entice the father into the country, abduct the child in his custody, and obtain personal service of her theretofore undisclosed petition seeking custody. The six year old child was removed surreptitiously from the custody of the only person she knew in this country, deprived of the only person with whom she could effectively communicate (mother's knowledge of Arabic was, by her own admission, rudimentary), and kept in this incommunicado state from September 20 until November 4 when she was surrendered to the juvenile court pursuant to the body attachment. Such conduct can well be classified as "reprehensible".

Nor am I troubled by the failure of the court to make specific findings of reprehensible conduct. The statute does not require such findings and our usual rules of review of a trial court's decision is to determine if the evidence supports the holding the court has made. Here it does. If the absence of findings constitutes a problem, however, the proper recourse is to return the matter to the trial court for the entry of the requisite findings, in this case whether the mother's conduct meets the requirements of declination of jurisdiction under § 452.475 and whether that is the basis of the court's order.

Further, I am unable to conclude that the court was in error in determining that it lacked jurisdiction. The court made a very specific set of findings in support of its conclusion that it lacked jurisdiction.[2] These holdings closely track the provisions

---

2. "1. This state is not the home state of the child and was not the home state of the child when this proceeding commenced on September 20, 1991.

"2. This state had not been the child's home state within six months prior to the commencement of this proceeding.

"3. The child does not have a significant connection with this state.

"4. There is not available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

"5. The child has not been abandoned.

"6. The child has not been mistreated or abused.

"7. The child has not been threatened with mistreatment or abuse.

"8. The child is not being neglected and has not been neglected.

"9. Although no other state has child custody jurisdiction and no other state has declined to exercise child custody jurisdiction, the Courts in Saudi Arabia have jurisdiction. Although not enacted in this State, Section 23 of the Uniform Child Custody Jurisdiction Act provides that 'the general policies of (the) Act extend to the international area.'

"10. It is just and proper under the circumstances for the Courts of this state to decline to exercise jurisdiction."

of § 452.450 which establish the circumstances under which the court should exercise jurisdiction. No challenge is made to any of these findings. The only attacks made are (1) that the procedures in Saudi Arabia will not give the mother a fair chance to obtain custody and (2) that the social climate, mores, and religious atmosphere in Saudi Arabia makes custody in the mother in this country "in the best interest of the child." The majority in upholding attack (1) concludes that the mother must be given an opportunity to establish that the "best interests of the child" require that the determination of custody be made in this state. She has, of course, had that opportunity and did not make the showing. I do not find the authorities relied upon by the majority to support this conclusion persuasive. Most involve situations where the child had been within the state for some period of time and had some connection with the state. The forum state had available the information of the child's previous care and treatment necessary to address the custody issue. That is not true here. None of the cases encompassed a situation such as this where the child had no recent connection at all with the state, was present therein on a transitory basis because of the misrepresentations of the parent seeking custody where the parent seeking custody had not functioned as a parent for over three years, and the parent seeking custody abducted the child from the only custodial parent.

Nowhere in any of the documents filed in the trial court or in this court has the mother asserted any basis for her conclusion that the best interests of the child warrant custody in her or that the courts of this state are in a position to make a determination of the best interests of the child. Nor does the record establish that it is in the "best interest of the child" that this state assume jurisdiction. As stated by the guardian ad litem to this court: "The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the State. *State of Missouri ex rel. June Lloyd Laws v. Higgins*, 734 S.W.2d 274 (Mo.App.1987)." As the court specifically found "there is not available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." There is nothing in the record to indicate any error in the court's findings 1 through 9, and mother makes no challenge to those findings. I am unable to conclude that any basis exists for a determination that it is in the best interest of the child that a court in this state assume jurisdiction nor can I perceive any evidence not heretofore provided which would support such a determination.

As to attack (2) I do not believe it provides any basis for exercise of jurisdiction in this state. In the first place the mother offered only hearsay evidence of the social circumstances in Saudi Arabia, which was rejected by the trial court. But more importantly it is not the concern of the courts of this country to evaluate the socio-economic status of persons having dual citizenship living in foreign countries. The child here knows no culture other than that of Saudi Arabia and knows no family other than that of her father. She was taken to Saudi Arabia at a young age by her mother who knew or should have known of that nation's culture. In this court the guardian ad litem, an experienced and respected member of the bar, has stated that the child herself is very bright for her age, is well behaved and shows every evidence of good parenting, home training and care. He, further, expresses his support for the court's order. Nothing in the mother's history indicates that she would provide any better parenting than that provided by the father. To punish the father because of the social environment of his country simply because we disapprove of that environment, and to uproot the child from the only environment and family she has ever known because of that same disapproval, is totally beyond the function of the courts of this state.

I find nothing in this record to warrant a finding that the court abused its discretion or erred in its application of the law in the

order which it has entered. I would quash the preliminary writ.