OPINION OF THE COURT
John F. O’Donnell, J.
There are two petitions before the court. The petitioner is seeking forgiveness of child support arrears and modification of child support based on the respondent’s alleged interference with his visitation rights. A second petition requests enforcement of the visitation related terms of a separation agreement which was incorporated but not merged into a judgment of divorce entered in Erie County. The respondent has moved to transfer jurisdiction over both petitions to Massachusetts based on the fact that she and the parties’ child reside in that State. The petitioner opposes the motion, arguing that New York should continue to exercise jurisdiction over these matters. The court reserved decision and provided both parties the opportunity to submit memoranda of law on the jurisdictional questions.
The petitioner and the respondent were married on June 2, 1979 in New York State. They have one child, Rebekah, born *170 on April 26, 1980. The parties and. their child resided in New York State until their separation. Sometime in 1986 the respondent and Rebekah moved to Massachusetts. A separation agreement, which was signed on December 20, 1985, provided the petitioner with specified periods of visitation and was incorporated but not merged into the judgment of divorce, granted by the New York State Supreme Court, on January 27, 1987. Thereafter, both parties brought petitions respecting visitation and child support in this court on numerous occasions. On July 8, 1988, Judge Victor E. Manz of this court issued an opinion and order wherein he wrote, inter alla, "The Court is also of the opinion that Carol Kuwik did intentionally prevent the Petitioner from seeing his daughter for reasons she perceived to be valid, but which are not acceptable to the Court.” Judge Manz then ordered that the petitioner have specified periods of visitation. Subsequently, the respondent brought a petition in Massachusetts pursuant to the Uniform Support of Dependents Law (USDL). A temporary order of support, later made permanent, in the amount of $25 per week was entered by a Hearing Examiner of this court. On November 29, 1990 the petitioner brought a petition to modify his support obligation and requested forgiveness of arrears due to interference with visitation. A Hearing Examiner dismissed that petition on January 25, 1991 but specifically preserved petitioner’s right to seek forgiveness of arrears before a Family Court Judge. This court later temporarily reduced the petitioner’s support obligation to $25 per month, based on respondent’s alleged interference with petitioner’s visitation rights.
It is clear that this court has long-arm jurisdiction over the respondent pursuant to CPLR 302 (b) as to the petition seeking a modification of support. New York was the matrimonial domicile, and the claim for support accrued both under the laws of this State, and under a prior agreement executed in this State. The benefits of the long-arm statute apply to a husband over a nonresident wife even if the husband is not seeking support. (See, Abbott v Abbott, 125 Misc 2d 837.) As in the Abbott case, the respondent here "cannot deny that she has exercised those certain minimum contacts with this State so that the exercise of in personam jurisdiction over her does not offend 'traditional notions of fair play and substantial justice’ ” (supra, at 840). Respondent argues that the issue of enforcement of visitation must be decided prior to deciding the child support issues. Since it has jurisdiction over the respon *171 dent, however, this court is capable of conducting a hearing on petitioner’s modification/forgiveness petition, including the taking of testimony respecting interference with visitation, whatever inconvenience this may cause the respondent.
In his memorandum of law, the petitioner concedes that this court may have lost jurisdiction to modify its prior custody order under the Uniform Child Custody Jurisdiction Act (UCCJA) (Domestic Relations Law art 5-A), but argues that it still has its "inherent power” to enforce compliance with its own lawful orders through civil contempt. The respondent argues that jurisdiction involving enforcement of visitation rights is determined pursuant to the Parental Kidnaping Prevention Act (PKPA) (28 USC § 1738A) as well as the UCCJA. The respondent asserts that New York no longer has jurisdiction over this case under the UCCJA, and thus has lost "continuing jurisdiction” pursuant to the PKPA (28 USC § 1738A [d]). The respondent also argues that both the PKPA, at section 1738A (a), and UCCJA, at sections 75-n, 75-p (1) and 75-p (2) of the Domestic Relations Law, demonstrate that the proper procedure to be followed to enforce petitioner’s visitation order is to file that order in Massachusetts and have its courts enforce it.
This court concurs with the respondent on this point, both as a matter of law and considering the practical implications of the situation. A reading of the relevant statutes and case law shows that there is no clear cut answer whether or not the UCCJA and PKPA apply to a visitation enforcement proceeding. Two out-of-State cases have ruled directly on this question and held that those are not applicable in a proceeding to enforce a child custody provision. (See, Commonwealth v Taylor, 332 Pa Super 67, 480 A2d 1188 [Pa Super 1984]; Matter of Marriage of Corrie, 32 Wash App 592, 648 P2d 501 [1982].) Another case from the State of Delaware, Fielder v Thorn (525 A2d 576 [Del Fam Ct 1987]), holds the opposite. The respondent invokes Pazder v Pazder (161 AD2d 1194) which states, inter alla, that "PKPA applies either to the enforcement or modification of existing custody decrees” (supra, at 1194). The PKPA sets out a statutory scheme whereby a State must afford full faith and credit to the custody order of a sister State. In the view of this court, the Pazder decision does not mean that the PKPA strips the initial State court from using its powers to enforce its own order. While this court is of limited jurisdiction, section 651 (b) of the Family Court Act grants a Family Court Judge, in determining cus *172 tody "the same powers possessed by the supreme court.” Under CPLR 5104, an order of this court is enforceable by contempt. The court in Joye v Schechter (118 Misccc 2d 403 [Fam Ct 1983]) lists a host of remedies available to a Family Court Judge to enforce a prior custody or visitation order of the court.
Notwithstanding this, there is little practical benefit to petitioner if the court utilizes its powers to enforce his visitation rights. As petitioner points out in his petition for cancellation/ forgiveness of child support arrears, this court did at one time issue a warrant for respondent’s arrest which was not enforceable in Massachusetts. Any similar remedies employed by the Massachusetts court will be capable of actual enforcement. This court sympathizes with petitioner’s repeated efforts in securing meaningful visitation rights with his daughter, but feels that this court is limited in the help it can offer as evidenced by respondent’s repeated alleged noncompliance with prior orders of this court. This court will redirect the respondent to comply with the visitation order entered by this court on July 29, 1988. It will then be up to the petitioner to certify and file that order in Massachusetts, pursuant to section 75-p of the UCCJA, to gain enforcement thereof. This court is confident that the Massachusetts court will duly enforce the visitation rights afforded to petitioner by this court. (See, Custody of a Minor [No. 3], 392 Mass 728, 468 NE2d 251 [Mass 1984].)
This court finds that it has lost jurisdiction over the custody/visitation aspects of this case pursuant to section 75-d of the Domestic Relations Law. Even assuming, arguendo, that there still existed a colorable basis for jurisdiction under, e.g., section 75-d (1) (b) (significant connection jurisdiction), this court would decline to exercise such based on the fact that New York is an inconvenient forum. (See, Matter of Heitler v Hoosin, 143 AD2d 1018 [2d Dept 1988].)
It is certainly unjust that the respondent’s misconduct as found by Judge Manz in continually denying the petitioner his visitation rights has arguably caused this court to lose continuing jurisdiction over this matter. The petitioner repeatedly asserts that this court should not reward the respondent for her interference in petitioner’s visitation by a ruling that it has lost jurisdiction over this matter. Section 75-i (2) of the Domestic Relations Law states, in relevant part, that "[i]f the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdic *173 tian if this is just and proper under the circumstances” (emphasis added). This permits, but does not require, the Massachusetts court to decline to exercise jurisdiction. In interpreting this section of the UCCJA, New York cases and those of other States have allowed a court which has UCCJA jurisdiction to exercise that jurisdiction despite the petitioner’s unclean hands. In Matter of Van Houten v Van Houten (156 AD2d 694), despite the fact that the father had absconded with the child for eight years, the Appellate Division held that New York should have exercised jurisdiction to modify the Florida custody order where New York was now the child’s home State. "While the policy consideration of discouraging abductions is a compelling one * * * we conclude that this is one of those rare instances where this imperative must be subordinated to the best interests of the child” (supra, at 697; see also, In re Snow v Snow, 369 NW2d 581 [Minn App 1985]).
The parties are in agreement that the child has lived in Massachusetts for approximately six years. Undoubtedly, Massachusetts now has "optimum access to relevant evidence” (Vanneck v Vanneck, 49 NY2d 602, 610 [1980]), and is the child’s home State. The parties’ litigation history makes it reasonable to assume that any proceeding for custody modification will require the appointment of a Law Guardian. Clearly, the Law Guardian should reside in the same locality as the child in order to adequately represent her. Unfortunately, while it will be inconvenient and costly for the petitioner to travel to Massachusetts, it would be doubly so for the child if she were forced to travel to New York for litigation. As in the Van Houten case (supra), this case represents an instance where the best interests of the child must have priority over the wrongful behavior of the respondent.
For these reasons,
Now, therefore it is,
Ordered, that this court assumes jurisdiction over the petition for cancellation/forgiveness of child support arrears, dated January 6, 1992 and schedules a hearing on that petition for December 23, 1992 at 9:00 a.m., Part 3; and it is further,
Ordered, that this Court directs respondent to immediately and fully comply with each and every part of the prior decision of this court, entered on July 29, 1988, a copy of which is annexed to and incorporated into this order, and it is further,
*174 Ordered, that for the reasons discussed above any further petition to enforce or modify the terms of custody and/or visitation shall be filed in the State of Massachusetts, in respondent’s county of residence; and it is further,
Ordered, that this court shall assume no further jurisdiction regarding the issues of custody and/or visitation unless and until the courts of Massachusetts elect to decline jurisdiction.